**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DEANN R. HENRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 09cv7936 |
| THE GOLDEN NUGGET PANCAKE | ) | Magistrate Judge Susan E. Cox |
| HOUSES, consisting of a group of six | ) | |
| restaurants all operating under one | ) | |
| ownership or control, as GNPH #ONE, | ) | |
| INC., GNPH #TWO, INC., GNPH | ) | |
| #EIGHT, INC., GNPH #NINE, INC., | ) | |
| GNPH #ELEVEN, INC., and | ) | |
| GNPH #TWELVE, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

While working as a server at a Golden Nugget Pancake House, plaintiff Deann Henry alleges that she was sexually harassed. After she complained, she was fired. Ms. Henry has now brought a sexual harassment and retaliation action under Title VII of the Civil Rights Act of 1965[1] against all six Golden Nugget Pancake Houses, including the restaurant where she worked. We refer to that particular restaurant by its corporate name: GNPH #Twelve, Inc.[2] Defendants seek partial summary judgment to limit the case to only that restaurant, which is where the alleged sexual harassment occurred. Defendants argue that each Golden Nugget restaurant operates individually from the others and each individual restaurant is a sole and distinct valid Illinois Corporation.[3] But Ms. Henry claims

---

[1] 42 U.S.C. § 2000e-2(a), e-3(a).

[2] *See* Pl.'s 2d Am. Compl., dkt. 67.

[3] Def.'s Mot. for Partial Summ. J. (hereinafter "Def.'s Mot.") at 2.

that all six restaurants are rightfully sued because they operate under one ownership and control.[4] Our review finds that questions of fact exist on this point. Defendants' motion is, therefore, denied [dkt. 71].[5]

**I.    Legal Standard**

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A factual dispute is 'genuine' only if a reasonable jury could find for either party."[6] A movant is entitled to summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any admissible affidavits, demonstrate there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.[7] In evaluating a motion for summary judgment, the Court should draw all reasonable inferences in favor of the nonmoving party and should view the disputed evidence in that party's favor.[8]

**II.   Analysis**

Defendants maintain that the restaurant where Ms. Henry worked did not commingle or combine itself with the other Golden Nugget restaurants because it: issued stock certificates, held shareholder meetings, maintained its own corporate records, and filed separate tax returns. It should be noted, however, that the documents defendants rely on to support their position are cited to as exhibits, but those exhibits are not attached to their motion and are not filed. Defendants also refer

---

[4] Pl.'s 2d Am. Compl. at 2. The Plaintiff does not contest that the individual Golden Nugget restaurants were separately incorporated. Pl.'s Mem. in Opp'n to Def.'s Mot. for Partial Summ. J. (hereinafter "Pl.'s Mem.") at 1, dkt. 72.

[5] The Court has jurisdiction over this matter under Title 42, United States Code, section 2000e-2(a), and Title 28 United States Code, section 1343(4). On April 27, 2010, the parties consented to jurisdiction of the United States Magistrate Judge pursuant to Title 28, United States Code section 636(a).

[6] *SMS Demag Aktiengesellschaft v. Material Sciences. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009).

[7] Fed.R.Civ.P. 56(c).

[8] *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996).

to additional facts by way of deposition testimony, but there are no citations to those transcripts, nor is there deposition testimony attached by way of exhibits. Defendants also did not file a Rule 56.1 statement of facts. Nonetheless, defendants do not dispute Ms. Henry's Rule 56.1 statement of facts. We, therefore, rely on those facts for purposes of this motion.

Ms. Henry claims that defendants' motion is defeated under either the de facto employer theory or by piercing the corporate veil.[9] Ms. Henry argues that all of the Golden Nugget restaurants have continuously operated as a single entity by Lester Quam, the son of the original owner of the group of restaurants known as "The Golden Nugget Pancake Houses of Illinois." According to Ms. Henry, even after the group of restaurants was dissolved in the 1980s, ultimate control of the restaurants remained with the Quam family.

This brings us to Ms. Henry's theory that all six Golden Nugget restaurants were her de facto employers. The de facto employer theory applies when a company that is not an individual's formal employer is "so extensively involved with the plaintiff's day to day employment that [it] is the 'real' employer for all intents and purposes, including Title VII liability."[10] Courts "look to the economic realities of the relationship and the degree of control the employer exercises," such as whether that employer sets the plaintiff's salary.[11] To determine whether a defendant is an employer of the plaintiff courts apply a five factor test:

> (1) the extent of the employer's control and supervision over the worker, (2) the kind of occupation and nature of skill required, (3) which party has responsibility for the costs of operation, such as the provision of equipment and supplies and the maintenance of the workplace, (4) the source of payment and benefits and (5) the duration of the job. Of these factors, the extent of control and supervision over the

---

[9] Pl.'s Mem. at 4, 11.
[10] *Kerr v. WGN Cont'l Broad. Co.*, 229 F. Supp. 2d 880, 886 (N.D. Ill. 2002).
[11] *Heinemeier v. Chemetco, Inc.*, 246 F.3d 1078, 1082 (7th Cir. 2001).

worker is the most significant in determining the employment status.[12] Here, we find that a reasonable jury could conclude that, if nothing else, Lester Quam had extensive control and supervision over Ms. Henry. For ease of reference we list several examples of Lester Quam's control over the restaurants and their employees:

- Mr. Quam monitored the finances of the Golden Nugget restaurants[13] and required the former owner of GNPH #12, Mario Herrera, to account for all the money that was spent and received at GNPH #12 each month and provide Mr. Quam with receipts.[14]
- Mr. Quam negotiated with the vendors providing goods to the Golden Nugget restaurants, utilized the restaurants' collective buying to secure lower prices, and personally guaranteed payment to vendors.[15]
- All restaurant decorating changes and improvements required Mr. Quam's approval.[16]
- Mr. Quam had all authority over menu item content and prices.[17]
- Mr. Quam and his attorney, Steve Venit, made all decisions concerning the insurance for GNPH #12.[18]
- Mr. Herrera considered Mr. Quam to be his boss, and Mr. Quam had the last say.[19]
- Mr. Quam decided Mr. Herrera's pay.[20]
- Mr. Quam commonly transferred owners and employees between the Golden Nugget restaurants, like Vanessa Neal, who owned another Golden Nugget restaurant before she acquired Mr. Herrera's ownership interest.[21]
- Though Mr. Quam could not fire an owner, he could simply choose not to renew an owner's lease.[22]
- Although Mr. Quam claimed that he did not have the authority to terminate Golden Nugget employees, Ms. Henry presents evidence of a voicemail message where he stated that a certain employee would be "gone" if Mr. Quam heard one more complaint about him.[23]

This evidence satisfies several of the factors listed above. It certainly suggests that Lester Quam

---

[12]*Hojnacki v. Klein-Acosta,* 285 F.3d 544, 550-51 (7th Cir. 2002).
[13]Pl.'s Facts ¶ 18.
[14]Pl.'s Facts ¶ 15.
[15]Pl.'s Facts ¶¶ 3-4.
[16]Pl.'s Facts ¶ 15.
[17]Pl.'s Facts ¶¶ 20, 28.
[18]Pl.'s Facts ¶ 21.
[19]Pl.'s Facts ¶ 7.
[20]Pl.'s Facts ¶ 19.
[21]Pl.'s Facts ¶¶ 23-24, 30, 39.
[22]Pl.'s Facts ¶ 38.
[23]Pl.'s Facts ¶ 30.

exerts substantial control over the management of GNPH #12.

We now turn to Ms. Henry's claim that the GNPH restaurants are affiliated in such a way that the fiction of a separate corporate existence should be disregarded. To pierce the corporate veil under

Illinois law, a plaintiff must show that: (1) there is a "unity of interest and ownership" between the individual entities, and; (2) "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice."[24] The purpose of this equitable theory is to prevent those who disregard the corporate form from relying on it to avoid their liability for wrongdoing.[25] Courts consider many factors to determine whether there is a "unity of interest" between corporations. These factors focus on whether the corporations respected corporate formalities or whether one corporation was merely a "sham acting at the whim of another."[26] The factors include:

> 1) inadequate capitalization; 2) failure to issue stock; 3) failure to observe corporate formalities; 4) nonpayment of dividends; 5) insolvency of the debtor corporation; 6) nonfunctioning of the other officers or directors; 7) absence of corporate records; 8) commingling of funds; 9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; 10) failure to maintain arm's-length relationships among related entities; and 11) whether, in fact, the corporation is a mere facade for the operation of the dominant stockholders.[27]

We find that Ms. Henry has established questions of material fact on several of these unity-of-interest factors. Despite defendants' contention that the individual restaurants maintained their own corporate records, held their own shareholder's meetings, and filed their own separate tax

---

[24] *Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 610 (7th Cir. 2009) (internal citations and quotations omitted). Veil-piercing is an equitable remedy governed by state law. *Id.*
[25] *Id.*
[26] *Id.* at 610-11.
[27] *Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 778 (Ill. App. Ct. 2d Dist. 2005).

returns,[28] former GNPH #12 owner Mario Herrera testified that he never conducted any corporate meetings, was not consulted about the contents of corporate minutes, and did not prepare tax returns for GNPH #12.[29] Rather, Mr. Herrera testified that Lester Quam's attorney directed him merely to sign the papers once a year.[30] And though the Court does not have access to these documents, both parties cite to evidence that GNPH #12 did not issue stock, and refer to tax returns that Ms. Henry claims show that the GNPH entities did not pay dividends.[31] GNPH #12 had a single stock certificate that passed from owner to owner, but no one paid any money to own the company.[32] While defendants claim that Mr. Herrera received an annual salary of $100,000,[33] the GNPH tax returns (that both parties reference) apparently show that no officer compensation was paid to anyone.[34]

Ms. Henry also presents evidence that the corporate finances were organized so as to leave the corporation with minimal assets. Lester Quam testified that several of the restaurants, including GNPH #12, had a negative net worth or were close to even, and the non-cash assets of the restaurants were extremely limited.[35] In addition, Mr. Quam charged the restaurants a base rent for lease of the land and building plus a percentage of gross sales, regardless of whether the restaurant made a profit.[36]

As noted above, Ms. Henry also presented evidence of Lester Quam's control over the GNPH restaurants. That evidence, in the aggregate, makes "a substantial showing that the

---

[28] Def.'s Mot. at 3, Group Ex. C.
[29] Pl.'s L.R. 56.1(b) Statement of Add'l Facts (hereinafter "Pl.'s Facts") ¶¶ 13-14.
[30] Pl.'s Facts ¶¶ 13-14.
[31] Pl's Mot. at 8 (citing to Def.'s Mot., Group Ex. C).
[32] Pl.'s Facts ¶¶ 25, 12, 24.
[33] Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 2, dkt. 79.
[34] Pl's Mot. at 8 (citing to Def.'s Mot., Group Ex. C, Form 1120 at line 12).
[35] Pl.'s Facts ¶¶ 31, 33.
[36] Pl.'s Facts ¶¶ 17, 31.

corporation is really a dummy or a sham for a dominating personality."[37] This takes us to the second prong of the corporate veil-piercing test, where "a plaintiff must show that a party would be unjustly enriched...[by] an intentional scheme to squirrel assets into a liability-free corporation while heaping liabilities upon an asset-free corporation."[38] It is unclear why Lester Quam's father, Howard Quam, sought to incorporate his Golden Nugget restaurants as separate corporations in 1986 and designate his then-managers as owners without seeking monetary contribution from them.[39] But the result appears to be a system of entities with few valuable assets, with a significant percentage of revenue funneled away to a central authority, who then exerts control over most aspects of the operations. We, therefore, find that Ms. Henry has at least established a question of fact concerning the legitimacy of this corporate structure.

### III. Conclusion

For the foregoing reasons, defendants' motion for partial summary judgment is denied [dkt. 71].

**IT IS SO ORDERED.**


**ENTERED:** May 18, 2012

**UNITED STATES MAGISTRATE JUDGE**
**Susan E. Cox**

---

[37] *Rosier v. Cascade Mountain, Inc.*, 855 N.E.2d 243, 251 (Ill. App. Ct. 1st Dist. 2006) (internal citation and quotation marks omitted).
[38] *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 381 n.1 (7th Cir. 2008) (internal quotations omitted).
[39] Pl.'s Facts ¶ 6-12.